CARDEN LIVESAY LTD
ATTORNEYS AT LAW
Joshua W. Carden, SBN 021698
419 East Juanita Avenue, Suite 103
Mesa, AZ 85204
joshua@cardenlivesay.com
T. (480) 345-9500
F. (480) 345-6559
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Dodson,<br><br>Plaintiff,<br>v.<br><br>Nissan North America, Inc., and Nissan Motor Acceptance Company, LLC,<br><br>Defendants. | **ORIGINAL COMPLAINT**<br><br>**(JURY TRIAL REQUESTED)** |

Plaintiff William Dodson hereby seeks relief under the ADEA as follows:

## PARTIES

1. Plaintiff William Dodson was at all relevant times herein a resident of Maricopa County, Arizona, and an "employee" within the meaning and purposes of all relevant statutes at all times material to this action.

2. Defendant Nissan North America, Inc. is a Delaware corporation, at all relevant times conducting its business in Maricopa County, Arizona.

3. Defendant Nissan Motor Acceptance Company, LLC ("NMAC") is a Delaware limited liability company, formerly known as Nissan Motor Acceptance Corporation, at all relevant times conducting its business in Maricopa County, Arizona.

4. The Defendants have a sufficient unity of interests, and share or codetermine those matters governing essential terms and conditions of employment to a sufficient degree that both Defendants may be held liable as "joint employers" of Plaintiff. Both Defendants are therefore

hereinafter referred to collectively as "Nissan."

5. Nissan was an "employer" of Plaintiff within the meaning and purposes of all relevant statutes at all times material to this action.

6. Nissan employs more than 500 people.

7. At all times pertinent to this Complaint, Nissan's managerial employees were acting within the course and scope of their employment with Nissan; and as a result thereof, Nissan is responsible and liability is imputed for the acts and omissions of their managerial employees, as alleged herein, under the principles of *respondeat superior*, agency, and/or other applicable law.

8. All acts alleged in this Complaint occurred in Maricopa County, Arizona.

## JURISDICTION AND VENUE

9. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 & 1343.

10. The unlawful employment practices described herein were committed within the State of Arizona, Maricopa County, where Nissan employed Plaintiff.

11. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

## ALLEGATIONS COMMON TO ALL CLAIMS

12. Nissan is an automobile manufacturer.

13. NMAC is a wholly owned subsidiary of Nissan that handles lease contracts and vehicle financing.

14. Nissan hired Mr. Dodson in 1994.

15. Mr. Dodson worked as a specialist in various marketing and sales roles for Nissan until 2000 when NMAC hired him as a Financial Services Manager based in Phoenix, Arizona.

16. Most recently, Mr. Dodson was responsible for the New Mexico and Arizona territories in NMAC's Mountain Region.

17. At the time of his termination in August 2020, Mr. Dodson was 55 years old.

18. Over the years, Nissan has periodically conducted alleged "reductions in force" (RIFs) where it terminates several employees at once, ostensibly in connection with restructuring of departments or regions.

19. However, in conducting those RIFs, Nissan has permitted its management to

differentiate against employees based on their age, salary and years of experience in deciding who to terminate.

20. Nissan's management has revealed the age-related discriminatory motives in towards older workers in conducting these RIFs, by using certain words and phrases, like "old f***ers," "old thinkers," the "Geriatric Region," "Cholesterol Kids," and other similar age-related statements.

21. In late 2019, while Jim DeTrude was Vice President, NMAC Sales & Marketing (formerly Director of Human Resources) over NMAC, NMAC workers over age 55 (then later over age 52) were first asked to voluntarily retire.

22. Two days after announcing the "Voluntary Separation Package," Nissan withdrew the offer to voluntarily retire for NMAC employees.

23. Thereafter, in their 2020 "Reorganization" (RIF), Nissan chose older highly qualified workers to involuntarily terminate.

24. Nissan knew and had the ages of each of the older workers when they made the decisions to terminate Mr. Dodson and the older workers' employment.

25. Specifically, Nissan gives Human Resources, Senior Executives, and Managers access to employees' ages, dates of birth, years of service information, and compensation data.

26. During the RIF process, Nissan gave lip service to allowing the terminated workers to apply for posted positions, but with only one exception, did not offer to transfer, retain, or rehire any of the workers terminated in the 2020 RIF along with Mr. Dodson.

27. All of the workers terminated with Mr. Dodson were over age 40, except one.

28. The exception to whom Nissan offered a new position was the lone employee under age 40.

29. In 2020 and before Mr. Dodson's termination, he applied for about 7 posted Nissan positions he was qualified to perform, and for which he indicated he was even willing to relocate if necessary.

30. Neither Mr. Dodson nor the older workers terminated along with him were transferred or rehired into jobs for which they were qualified.

31. The open Nissan jobs went to less qualified younger workers.

32. Mr. Dodson's duties were reassigned to less qualified younger workers.

33. When Mr. Dodson returned a form to Nissan in June 2020 acknowledging that he could apply for other Company positions (in connection with the impeding RIF), he told his direct manager Jamie Beck, Jim DeTrude, and Jim Papalexis, then Nissan Senior Manager of HR, that he believed he was being subjected to age discrimination.

34. Eric Ledieu, another member of upper management, subsequently asked Mr. Dodson's direct boss for the full list of jobs for which Mr. Dodson had applied.

35. Of course, Mr. Dodson was not hired or transferred into any of those other jobs.

36. The new HR representative working with Mr. Dodson confirmed that his managers and Mr. DeTrude were fully aware of his recent complaint of age discrimination.

37. Multiple other employees have now stepped forward and brought claims of age discrimination and retaliation, including EEOC charges and lawsuits.

38. Upon information and belief, employee names with pictures, salaries and ages have been typically displayed on screen at Nissan meetings when decisions are made regarding terminating older workers.

39. The Nissan Regional Managers were required to sign a nondisclosure agreement before attending the meetings where these Nissan terminations were discussed.

40. Nissan changed Mr. Dodson's territories/districts four times shortly before his termination.

41. Nissan did not offer to pay Mr. Dodson relocation assistance for any of these changes (as they typically do for most workers).

42. Upon information and belief, Nissan uses this tactic to drive out older workers toward the end of their careers by making them so uncomfortable that they quit.

43. Mr. Dodson was thus forced to commute from his Arizona home to North Dakota, South Dakota, Iowa, Nebraska, Colorado, West Texas and New Mexico.

44. However, despite Nissan's efforts to push Mr. Dodson out with excessive travel, he managed the changed territories without moving.

45. Mr. Dodson needed his job at Nissan and was a loyal Nissan employee.

46. On August 3, 2020, Mr. Dodson was specifically told at his pre-termination exit Interview by the new HR representative , that Eric Ledieu, Jim DeTrude, and Jim Papalaxis made the decision to terminate him and the other older workers.

47. Both DeTrude and Papalaxis were part of Nissan's Human Resources during a prior "reorganization" and RIF, when among other similarities, salaries of older and highest paid workers were substantially cut in effort to make them uncomfortable and quit.

48. At that same meeting, Mr. Dodson told the HR Representative again that he believed Nissan's termination of his employment and failure to transfer or hire him for any jobs was due to his age.

49. As of Dodson's last day with Nissan, August 4, 2020, Nissan had not responded to Dodson's three open job applications.

50. On August 4, 2020, HR re-issued the termination and severance paperwork listing the ages and positions of Mr. Dodson and those of the other seven workers being terminated; his age and position had not previously been listed on the severance package.

51. HR informed Mr. Dodson that his notice and consideration time would now run from August 4, 2020.

52. Older workers are disparately impacted by Nissan terminations handled in the fashion of Mr. Dodson's.

53. Of the eight people terminated in Mr. Dodson's RIF alone, seven were ages 49- 56.

54. Upon information and belief, Nissan did not terminate the older workers for any legitimate business reason.

55. Subsequent to Mr. Dodson's termination, Nissan has reached out to some of the terminated older workers with his same skill set or former position to return to work on a "contract" basis.

56. Nissan has not included Mr. Dodson in its rehiring efforts, despite his qualifications.

57. Upon information and belief, this is because of Mr. Dodson's complaints of age discrimination and retaliation, both informal and formal.

**Administrative Remedies**

58. Plaintiff timely filed a charge of discrimination against Nissan with the EEOC. A true and correct copy of that charge is attached hereto as Exhibit A.

59. The EEOC issued its Notice of Suit Rights on that charge. A true and correct copy of that Notice is attached hereto as Exhibit B.

60. At the same time, Plaintiff timely filed a second charge of discrimination against NMAC with the EEOC. A true and correct copy of that charge is attached hereto as Exhibit C.

61. A Notice of Suit Rights has not yet been used on the second charge. This complaint will be amended to include that Notice when issued.

62. All conditions precedent to the filing of this lawsuit have occurred or been satisfied.

## FIRST CAUSE OF ACTION – ADEA DISCRIMINATION

63. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

64. Nissan has violated, and continues to this day to violate, the Age Discrimination in Employment Act, 29 U.S.C. § 623, pursuant to 29 U.S.C. § 626 and 29 U.S.C. § 216; Plaintiff brings disparate treatment, hostile work environment, and disparate impact claims.

65. Plaintiff was 40 years of age or older at the time he was discharged and not transferred or rehired into another position.

66. Nissan discharged Plaintiff and refused to transfer or rehire him into another position because of his age.

67. Additionally, Plaintiff and his fellow workers were subjected to slurs, insults, jokes or other verbal comments related to age by Nissan and its decisionmakers.

68. This conduct was both unwelcome and sufficiently severe or pervasive to alter the conditions of Plaintiff's employment; and created what Plaintiff subjectively perceived to be an abusive or hostile work environment because of Plaintiff's age.

69. A reasonable employee in Plaintiff's circumstances would consider the working environment to be abusive or hostile.

70. Nissan used specific selection criterion that had a significantly adverse or disproportionate impact on employees 40 years of age or older; and

71. Nissan's selection criterion resulted in Plaintiff being discharged and not rehired or transferred into another position.

72. Nissan's contention that Plaintiff was terminated for any other reason is a pretext for age discrimination.

73. As a direct and proximate result of Nissan's conduct, Plaintiff has sustained actual and economic damages in an amount to be determined at trial.

74. Nissan's disparate treatment of Plaintiff was willful, in bad faith, and subjects Nissan to liquidated damages.

75. Plaintiff should also receive injunctive relief as fashioned by the Court to remedy the wrongs caused by Nissan's actions.

## SECOND CAUSE OF ACTION – ADEA RETALIATION

76. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

77. It is unlawful for Nissan to retaliate against any employee for engaging in protected activity. 29 U.S.C. § 623

78. Plaintiff engaged in protected activity by complaining of age discrimination during his employment and at his termination, and by filing a charge of discrimination with the EEOC.

79. Nissan terminated Plaintiff and has refused to transfer or rehire him into another position.

80. There is a causal connection between Plaintiff engaging in the aforementioned protected activity and his termination in that but for the Plaintiff engaging in the protected activity, Nissan would not have terminated him.

81. As a direct and proximate result of Nissan's conduct, Plaintiff has sustained actual and economic damages in an amount to be determined at trial.

82. Nissan's disparate treatment of Plaintiff was willful, in bad faith, and subjects Nissan to liquidated damages.

83. Plaintiff should also receive injunctive relief as fashioned by the Court to remedy the wrongs caused by Nissan's actions.

## JURY DEMAND

84. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

A. Declaring that the acts, practices, and policies complained of herein are in violation of federal law;

B. Directing Nissan to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment or employment opportunities, including but not limited to the required implementation and enforcement of policies, practices and programs that provide equal employment opportunities for employees over the age of 40, and that eradicate the effects of its present unlawful employment practices; remedial and additional training to its management, supervisors, human resources personnel, and employees regarding age-based discrimination in the workplace and unlawful retaliation;

C. Directing Nissan to place Plaintiff in the position he would have occupied but for Nissan's unlawful actions, and make Plaintiff whole for all earnings he would have received, including, but not limited to, back pay, front pay or reinstatement, pension, and other lost benefits;

D. Awarding Plaintiff liquidated damages in an amount equal to his economic losses;

E. Awarding Plaintiff pre- and post-judgment interest, the costs of this action, and reasonable attorneys' fees as provided by the statutes providing the causes of action cited herein; and

F. Granting such other and further relief, including equitable relief authorized by the cited statutes, as this Court deems necessary and proper.

Respectfully submitted on this 26th day of May, 2023,

CARDEN LIVESAY, LTD.

By: s/Joshua W. Carden
Joshua W. Carden
*Attorneys for Plaintiff William Dodson*